UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
RONNIE GOSS,                                    :
                                                :
                                     Plaintiff, :
                                                :        05 Civ. 9592 (HB)
                     - against -                :
                                                :        OPINION & ORDER
GLADYS BERNIER, LENOIR TUCKER, and              :
WEST SIDE FEDERATION FOR SENIOR AND             :
SUPPORTIVE HOUSING, INC.                        :
                                                :
                                    Defendants. :
-------------------------------------------------------------------------x

Hon. HAROLD BAER, JR., District Judge:

On November 14, 2005, Plaintiff, Ronnie Goss, proceeding *pro se*, filed a complaint against his former employer, West Side Federation for Senior and Supportive Housing, Inc. ("WSFSSH"), his former supervisor, Gladys Bernier ("Bernier"), and WSFSSH Human Resources Director, Lenoir Tucker ("Tucker") (collectively "Defendants") that alleged race, national origin discrimination, and hostile work environment claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* On August 11, 2006, Defendants filed a motion to dismiss all claims.

Before that motion was fully briefed, law firm Clifford Chance LLP agreed to represent Plaintiff on a *pro bono* basis and an amended complaint was filed on November 14, 2006. That complaint reiterated the Title VII violations in the original complaint and added causes of action pursuant to the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* as well as state law claims of intentional and negligent infliction of emotional distress. Plaintiff subsequently dropped the FMLA claim and the complaint was amended a third time, on consent. Defendants have now moved for summary judgment with respect to all claims. For the reasons stated below, the motion is GRANTED in part, and DENIED in part.

## I.        BACKGROUND

The facts set forth below, construed in favor of the Plaintiff as required on a motion for summary judgment, are as follows. On November 18, 1998, Ronnie Goss, an African-American male, was hired as a program aide on a per diem basis by WSFSSH, a community-based organization that provides affordable housing for low-income individuals. Laura Jervis Affidavit

("Jervis Aff.") ¶ 5.  Goss was assigned to the West 129th Street site, an adult residence that houses homeless individuals, where he worked the night shift, two days a week.  Ronnie Goss Affidavit ("Goss Aff.") ¶ 2.  As a program aide, Goss was paid $10.00 per hour and was responsible for supervision and personal care of the residents.  Marjorie Kaye Affidavit ("Kaye Aff."), Ex. 3.  During this time, Goss also worked as a correctional officer at the Sing Sing Correctional facility.  Goss Aff. ¶ 4.

Goss alleges that Bernier treated African-American employees less favorably than his Haitian co-workers and Bernier made disparaging remarks about African-Americans in front of the residents, for example, calling African-Americans lazy.  Specifically, he alleges that he, and another African-American employee, were blamed for incidents caused by his Haitian co-workers, and African-American employees were paid less or not at all when the task authorized sick leave.  Further, Goss also alleges that when he performed additional duties, he was not compensated accordingly whereas his Haitian co-workers were paid more money for extra services.

In 2002 and again in June 2003, Goss alleges that he asked Defendant Bernier to train him to dispense medication to the residents, a supervisory job that paid more.  According to Goss, Bernier refused to promote him, stating that he was unqualified, despite his prior experience as a therapy aide, and instead, gave the position to a Haitian employee with no experience.  Bernier maintains that Goss never asked for a promotion.  Goss states that he reported these incidents to WSFSSH Human Resources Director, Lenoir Tucker, but nothing was done.

On or about May 19, 2004, while at Sing Sing Correctional Facility, Plaintiff injured his thumb, which required surgery.  Def.'s Stmt. Facts ¶ 10; Goss Dep. 123:2-8.  Goss informed both Defendants Bernier and Tucker of this and requested time from work as well as payment for his accrued sick time.  He submitted two medical notes, on June 1, 2004 and again on June 24, 2004, that confirmed his inability to work until September 1, 2004.  Kaye Aff., Ex. 4.  Despite his request to use his accrued sick time due to his injury, Plaintiff alleges that Bernier gave him two options – report immediately to work or be fired.  Goss Aff. ¶¶ 9,13.  Since he was unable to work and did not report as directed, Goss considered his position terminated as of May 19, 2004.  Id. ¶ 14.  However, there is no termination notice in Goss' employment file and Defendant Tucker, Human Resources Director, testified that it was her belief that Goss left voluntarily, and

was not fired.  Lenoir Tucker Deposition ("Tucker Dep.") at 164:13-19.

After leaving WSFSHH, Goss contacted Defendant Tucker and requested payment for his accrued sick, holiday, and vacation days.  Goss Aff. ¶ 14.  According to Goss, he only received partial payment for his holiday and vacation time during the summer of 2004, Id. ¶ 19, and still has payment for three days outstanding.[1]  Kaye Aff., Ex. 7.

Following his purported termination, Goss states that he contacted a prepaid legal services agency and was informed that he must file a complaint with the Equal Employment Commission ("EEOC") to preserve his discrimination claim.  Goss Aff. ¶ 15.  Thus, after conducting research on the internet, he states that he completed a discrimination complaint and mailed it to the EEOC in the summer of 2004.  Id. ¶ 18.  Plaintiff reports that he did not keep a copy of the complaint but called the EEOC several months later, in early 2005, to ask about the status of his charge.  Id. ¶ 21.  At that time, he was informed that there was no discrimination complaint on file for him.  Id.  This complaint or any other documents associated with this complaint has not surfaced, either through the Freedom of Information Act ("FOIA") request Defendants' counsel submitted to the EEOC or provided by Plaintiff himself.

On April 18, 2005,[2] Plaintiff filed another discrimination complaint with the EEOC that alleged he was treated less favorably than employees of Haitian origin and was wrongly terminated by his supervisor, Defendant Bernier, who is also Haitian.  Kaye Aff., Ex. 7.  In a letter dated May 10, 2005, the EEOC investigator requested that Plaintiff resubmit his discrimination charge.  Id., Ex. 8.  Plaintiff did so on May 19, 2005.  Id., Ex. 9.  On July 28, 2005, the EEOC issued a right-to-sue letter on the basis that Plaintiff failed to file a timely complaint with the EEOC.  Id., Ex. 10.  Plaintiff then filed a *pro se* complaint in this Court on November 14, 2005.

## II.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, the movant on a motion for summary judgment must establish that there is no genuine issue of material fact and the undisputed facts are sufficient to warrant judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby Inc., 477 U.S. 242, 250 (1986).  The party opposing

---

[1] In fact, Goss reports that his payments from the WSFSSH stopped when he did not agree to withdraw his discrimination complaint at the EEOC.

[2] The date on the discrimination charge reads April 18, 2006 but date stamp received by the EEOC indicates April 20, 2005.  Given the timeline of events, it appears that Plaintiff inadvertently noted the wrong year on his complaint.

summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but  . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  A disputed issue of material fact alone is insufficient to deny a motion for summary judgment, the disputed issue must be "material to the outcome of the litigation," Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), and must be backed by evidence that would allow "a rational trier of fact to find for the non-moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); See also Bickerstaff v. Vassar College, 196 F.3d 435, 452 (2d Cir. 1999) ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.").  In ruling on a summary judgment motion, the Court resolves all ambiguities and draws all inferences against the moving party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987).

It is well-known that in employment discrimination cases, where it is necessary to explore an employer's intent and motivation, summary judgment may not be appropriate.  See Patrick v. LeFevre, 745 F.2d 153, 159 (2d Cir. 1984).  Consequently, affidavits and deposition testimony must be scrutinized for circumstantial evidence, which if believed, would support a finding of discrimination.  Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994).  However, Plaintiff must still produce sufficient evidence in support of his claim so that a rational juror could find in his or her favor.  See Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all [discrimination] cases.").

## III.    DISCUSSION

### A.  *Title VII Claims*

#### 1. *Statute of Limitations*

Pursuant to Title VII, an employer may not "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  In order to bring an employment discrimination claim in federal court, the plaintiff must file a discrimination charge with the EEOC or an appropriate state agency.  42 U.S.C. § 2000e-5(b).  For the claim to be timely under

Title VII, the discrimination charge must be filed within 180 days of the alleged illegal employment action, or, in the case where the claimant has already filed a charge with a state or local agency, the charge must be filed with the EEOC within 300 days of the alleged discriminatory act. See 42 U.S.C. § 2000e-5(e)(1). The time begins to run when the claimant is on notice of the discriminatory act, not on the date the discriminatory act happened. See, e.g., Miller v. Int'l Tel. and Tel. Corp., 755 F.2d 20, 23 (2d Cir. 1985) (stating that the clock starts to run on a discriminatory discharge claim "when the employee receives a definite notice of the termination, not upon his discharge."). These timeframes serve as a statute of limitations for Title VII cases. See, e.g., Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996).

The parties dispute whether this claim is time-barred under Title VII. Although parties have completed discovery and trial, if necessary, is scheduled to begin on February 12, 2007, neither party submits much in the way of evidence in the form of affidavits, deposition testimony, or motion practice. Instead, it appears that both parties focus exclusively on the statute of limitations argument.[3]

Goss asserts that he filed two complaints with the EEOC, one in the summer of 2004, and the second (a copy of which is in his EEOC file), on April 18, 2005. The first complaint was allegedly lost by the EEOC. However, Goss does not have a copy of that original complaint or any evidence, for that matter, that supports his claim that a complaint was sent to and lost by the EEOC in the summer of 2004. See B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1102 (9th Cir. 2002) (finding that a plaintiff may present evidence of agency error to demonstrate proper exhaustion of a Title VII claim). He provides no details with respect to the date of his filing or the individuals he spoke to at the EEOC to bolster his claim. At his deposition, he testified as follows:

> A: [W]hen I first contacted EEOC, it was right after the incident, I think it was probably in the summertime of 2004. And I can't remember the guy's name who I was in contact with.

Ronnie Goss Deposition ("Goss Dep.") 51:5-10. As a result, I cannot credit the existence of the first complaint and will only consider the April 18, 2005 complaint.

Plaintiff claims that he was terminated by Defendant Bernier on or about May 18, 2004,

---

[3] In fact, Defendants do not address any of the Plaintiff's substantive claims with respect to Title VII.

after he requested time off to recover from his thumb injury, and in his most recent EEOC complaint he indicated that May 17, 2004 was the date of the last discriminatory act.  Kaye Aff., Ex. 7.  However, to this date, Goss has not received a termination notice from WSFSSH.  Tucker Dep. 152:17-22.  In fact, both Defendants Bernier and Tucker testified that they still considered Goss an employee for some time after May 19, 2004 and he has not, in fact, ever been fired by WSFSSH.  Gladys Bernier Deposition ("Bernier Dep."), 109:13-19; accord Tucker Dep., 152:17-22.  Thus, based on this alone, Goss' time to file his complaint with the EEOC has not yet begun to run.

Further, Plaintiffs' most recent discrimination complaint to the EEOC is littered with allegations of WSFSSH's failure to pay him his accrued sick and vacation time after his purported termination on May 19, 2004.  In fact, he alleges that he is still owed money for approximately three vacation days.  Kaye Aff., Ex. 9.  These allegations, which apprise the EEOC of instances of discrimination after May 19, 2004, may also trigger the start of the clock at a later time.  See, e.g., Williams v. New York City Housing Auth., 458 F.3d 67, 70 (2d Cir. 2006) (stating that complaints to the EEOC should be read in light of the fact that their purpose is to put the EEOC investigator on notice as to Plaintiff's discrimination claims).  In light of the muddled timeline as to when the clock started to run and when the EEOC complaint was actually filed, this aspect of the motion that seeks dismissal on statute of limitations grounds is denied.

*2. Title VII  Substantive Claims*

Plaintiff brings several Title VII claims against his former employer WSFSSH, his supervisor, Bernier, and the Human Resources Director of WSFSSH, Tucker.  While the Plaintiff is not barred from bringing these claims, Plaintiff's Title VII claims against the individual Defendants must be dismissed.  Under Second Circuit law, "individuals are not subject to liability under Title VII," Wrighten v. Glowski, 232 F.3d 119, 120 (2d Cir. 2000) (per curium), citing Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995) ("We now hold that individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII.").  Since these Defendants are only sued in their individual capacities, the Title VII claims

against them must be dismissed.

Thus, in order to survive summary judgment of his Title VII claims, Goss must demonstrate a basis to hold WSFSSH vicariously liable for the conduct of their employees.  See, e.g., Kotcher v. Rosa & Sullivan Appliance Center Inc., 957 F.2d 59, 63 (2d Cir. 1992).  Goss alleges that his supervisor, Bernier, discriminated against him in the terms of his employment and Tucker, Human Resources Director, after notification, failed to address his complaints. Employer vicarious liability for a Title VII violation can be established if the individual responsible for the discriminatory or harassing conduct was (or is) the plaintiff's supervisor, with immediate authority over the employee.  Mack v. Otis Elevator Co., 326 F.3d 116, 125 (2d Cir. 2003).  That is the case here.  Defendant Bernier was Plaintiff's supervisor and admits that she had the authority to hire all employees at the West 129th Street site, and did so.  Bernier Dep. At 17:17-20; See also Pennsylvania State Police v. Suders, 542 U.S. 129, 144-45 (2004) ("When a supervisor takes a tangible employment action against a subordinate; it would be implausible to interpret agency principles to allow an employer to escape liability").  In fact, Bernier hired Plaintiff as a program aide at the 129th Street Residence, Kaye Aff., Ex. 3, and set his work hours.  Goss Dep. 43:5-15.

Defendants fail to argue that any of Plaintiff's Title VII claims – hostile work environment, wrongful termination, or failure to promote – should be dismissed on the merits. That fact notwithstanding, I address those claims below.

*a. Hostile Work Environment*

To state a claim for hostile work environment, the plaintiff must allege that his work environment was abusive.  Harris v. Forklift, 510 U.S. 17, 22 (1973).  Specifically, plaintiff must show that he is 1) a member of a protected class, 2) suffered unwelcome harassment, 3) was harassed because of his membership in a protected class, and 4) the harassment was sufficiently severe or pervasive to alter conditions of his employment and create an abusive work environment.  Meritor Sav. Bank FSB v. Vinson, 477 U.S. 57, 65 (1986).  The court looks at the totality of the circumstances to determine harassment – the frequency and severity of the conduct, whether the conduct was physically threatening or humiliating, and whether the behavior interferes with an employee's performance.  Harris, 510 U.S. at 23.  To succeed, the Plaintiff must show that "either a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [his]

working environment." <u>Cruz v. Coach Stores, Inc.</u>, 202 F.3d 560, 570 (2d Cir. 2000) (internal quotation marks omitted).  This standard is demanding, and requires proof that the conduct was offensive, pervasive and continuous.  <u>See, e.g.</u>, <u>Kotcher v. Rosa & Sullivan Appliance Ctr.</u>, 957 F.2d 59, 62-63 (2d Cir. 1992).

Should the Plaintiff meet the four-pronged test for a *prima facie* case, the <u>McDonnell Douglas</u> burden-shifting framework comes into play, <u>see</u> <u>Reed v. A.W. Lawrence & Co.</u>, 95 F.3d 1170, 1178 (2d Cir. 1996), and the burden of going forward shifts to the employer to "articulate some legitimate, non-discriminatory reason for the employer's rejection."  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).  If the employer is able to do so, then plaintiff must show that the stated reason is pretextual.  <u>Id.</u>

It is undisputed that Plaintiff, an African-American male, is a member of a protected class.  He alleges that his supervisor, Defendant Bernier, humiliated him by making disparaging remarks about African-Americans and criticized his abilities in front of the residents.  Goss Dep. 161:9-12.  He testified that there were approximately four times when Defendant Bernier directed harassing statements at him over the course of his employment.  Goss Dep. 107:13-18.  Further, Goss alleges that he was threatened with termination several times prior to May 2004 so that a Haitian employee could receive more benefits.  Goss Aff. ¶ 24.  He claims that his working conditions led him to seek psychiatric care, although he concedes that his job as a correctional officer contributed to his stress.  <u>Id.</u> at 161:25-162:7.  He provides no further information with respect to his hostile work environment in his affidavit or the deposition testimony provided to the court.

Although Plaintiff may have worked in a stressful environment, stressful working conditions do not satisfy the hostile work environment standard.  <u>Murphy v. Bd. of Educ. of the Rochester City. Such. Dist.</u>, 273 F. Supp.2d 292, 312 (W.D.N.Y. 2003) (holding that "difficult or stressful working conditions are not tantamount to a hostile work environment.").  Further, Goss had failed to give any examples that demonstrate that the Defendants subjected him to the type of severe and offensive harassment necessary to satisfy the hostile work environment standard.  Four harassing statements made over a five year period do not rise to the level of a hostile work environment.  As a result, summary judgment is granted as to this claim.

*2. Remaining Title VII Claims*

Plaintiff alleges that he was not promoted to the position of supervisor, received less money than his similarly situated Haitian co-workers, and was eventually terminated due to race and national origin discrimination.

To establish a Title VII violation, the plaintiff must first establish a *prima facie* case of discrimination.  To do so, the plaintiff must allege that (1) he is a member of a protected class; (2) he was qualified for the job; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discriminatory intent.  See, e.g., Sanders v. New York City Human Res. Admin., 361 F.3d 749, 755 (2d Cir.2004).  If the Plaintiff sets forth a *prima facie* case, the McDonnell Douglas burden-shifting framework then applies.

*a. Wage Disparity*

Although Plaintiff alleges wage discrimination in his complaint, there is nothing in his briefs, affidavits, or any of his moving papers with respect to this claim, so it is not discussed. Since Plaintiff has submitted no evidence of his wages, not to mention his wages in comparison with his Haitian co-workers, the wage disparity claim must be dismissed.

*b. Purported Wrongful Termination Claim*

Goss contends that he was terminated on May 19, 2004, and that action constitutes an adverse employment action.  At his deposition, he testified as follows:

> Q:  Is it your understanding that you're still employed by defendant, are you still employed there?
>
> A:  No.
>
> Q:  Is it the case that Ms. Bernier said to you that you're fired?
>
> A:  Yes.

Goss Dep. 196: 13-19; see also Goss Aff. ¶¶ 7, 9.  Another employee was hired to replace Goss, accomplished without any notification to Plaintiff.  Pl.'s Stmt. of Material Facts ¶ 32.

Defendants maintain that Goss was never terminated.  There is no termination record in Plaintiff's employment file (which would be provided by Goss' supervisor, Defendant Bernier), Tucker Dep. 153:14-24, and none was provided here.  Lenoir Tucker, Human Resources Director for WSFSSH, testified as follows.

> Q:  And so let me ask you directly, to the best of your knowledge, was Mr. Goss terminated from the West Side Federation?
>
> A:  We don't have a termination form for him yet; so as far as I'm concerned, he's still an employee.

Tucker Dep. 152:17-22.  Further, Defendant Bernier disputes Goss' recollection of the events of May 19, 2004, the day of the alleged termination.  According to Bernier, she never presented Goss with an ultimatum – report to work or be fired.

> Q:  Never any conversation that you had with Mr. Goss explicitly saying you're fired?
>
> A:  No.
> . . .
>
> Q:  When Mr. Goss – when you had that conversation with Mr. Goss, did he say to you that he will not return?
>
> A:  No.
>
> Q:  He said to you that he's just going to take time off indefinitely [].
>
> A:  He didn't even say anything.  He just said, I'm on disability.  I just found out I can't be on disability and working.  I'll call you.  That's all he said.

Bernier Dep. 110:6-111:7.  Given the different version of events presented by the parties, the circumstances surrounding Goss' departure from WSFSSH presents a material issue of fact and thus the motion must be denied unless no discriminatory animus has been shown.

Here, Plaintiff ties his alleged firing to just that.  According to Goss, Bernier made disparaging remarks about African-Americans and failed to assign jobs or benefits to African-Americans which were instead given to Haitian employees.  Goss Aff. ¶¶ 25, 26.  In fact, Goss testified that even before May 2004, Defendant Bernier threatened to fire him numerous times as a means to make additional benefits available to a Haitian worker, Reynold Antoine, as well as shift blame for resident complaints about Haitian employees to him.  Id. ¶ 24.  Defendants simply contend that Plaintiff was not discharged and fail to meet their burden under McDonnell Douglas.

### c. Failure to Promote

Goss also alleges that Haitian employees with less experience were promoted ahead of

him.  To set forth a *prima facie* case, he must satisfy the same four prongs -- (1) he is a member of a protected class; (2) he was qualified for the job; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discriminatory intent.  Again, Goss, as an African-American male, is a member of a protected class and Defendants do not contend that he was unqualified to fill the supervisor position.  Rather, the question here, with respect to the *prima facie* case, is whether Goss applied for the vacant supervisor position.

To demonstrate discriminatory failure to promote, plaintiff must show that he "applied and was qualified for a job for which the employer was seeking applicants" and was rejected although the position was still available.  Petrosino v. Bell Atlantic, 385 F.3d 210, 226 (2d Cir. 2004) (internal citation omitted).  If the Plaintiff establishes a *prima facie* case, the McDonnell Douglas burden-shifting framework applies.

It is undisputed that Bernier, as the supervisor at the West 129th Street site, had the authority to hire employees for that site, Tucker Dep. 159:6-7 ("Supervisors, the directors of programs can do their own hiring."), and she did so.  Bernier Dep. 17:17-25.  Defendant Bernier contends that Goss never requested a promotion, thus she hired Raymond Lewis ("Lewis"), a person of Haitian descent, to fill the vacant supervisor position.  Bernier testified as follows:

> Q:  Do you recall whether, before you hired Mr. Lewis or even after, whether Mr. Goss came to you and said, Ms. Bernier, I would like to see if I could get this position as a supervisor?  Did that ever happen?
>
> A:  Never.

Bernier Dep. 72:4-7.  Goss maintains that he asked Bernier to distribute medications, a supervisor position that came with more pay, but was denied.  Goss Aff. ¶ 23.

Although this Circuit has stated that in order to bring a failure to promote claim, employees must submit an application for a vacant position (not only express interest in the position), Brown v. Coach Stores, Inc., 163 F.3d 706, 709 (2d Cir.1998), it appears that at the West 129th Street site, Bernier permitted employees to informally express interest as a means to apply for vacant positions in the Department. In fact, she testified that she may have considered Goss for the supervisor position (which may never have been posted)[6] simply if he had asked.

---

[6] Bernier references at least two supervisory positions that were available during Plaintiff's tenure at WSFSSH and with respect to one, it is unclear whether that position was ever posted.  See, e.g., Bernier

Q: If Mr. Goss had asked you, would you have considered him for a position?

A: If had leave [] his other job, maybe.

Bernier Dep. 72:4-7. This informal application process, condoned by Bernier, allows Goss' failure to claim to survive. <u>See id.</u> at 710, n.2 (stating that a formal job application may not be required if "the position was not posted and . . . the employee made an effort to apply for the specific position through an informal procedure endorsed by the employer.").

Further, in satisfaction of the last prong of the *prima facie* case, Goss connected his failure to receive a promotion to discrimination on the part of Defendant Bernier. Goss testifies that no African-Americans were assigned to dispense medication, a job that came with more responsibility and money.

Q: Were there any other Black Americans that work at the 129th Street facility that dispense medication?

A: No.

Q: Everybody that dispensed medication was Haitian?

A: Haitian or Dominican.

Goss Dep. 104:3-9. Goss affirms that Bernier would state that African-Americans are lazy and supervisory positions are only for hard workers. Goss Aff. ¶ 25. Further, she would award the majority of overtime work to employees of Haitian descent. <u>Id.</u> ¶ 26.

Goss avers that he reported to Human Resources Director, Tucker, that Defendant Bernier refused to award available supervisor positions to African-Americans, and instead, filled those positions with Haitians. <u>Id.</u> ¶ 12. While Tucker denies that Goss reported that he was discriminated against, she testified that Goss complained to her that Defendant Bernier favored her friends. Tucker Dep. at 102:19:23 ("The only comment I remember from him was saying Gladys [Bernier] favor [sic] her friends.").

By way of specific example, Plaintiff contends that he was not selected for the supervisor position in lieu of a less qualified, Haitian individual, Raymond Lewis ("Lewis"). Bernier testified that Lewis was hired because he came highly recommended from her ex-boss. Bernier Dep. at 75:8-13. However, Goss, an employee familiar with the residents and the system at the site, had experience that was relevant to the supervisory job at hand. Prior to joining WSFSSH,

Dep. 76:16-77:16.

Plaintiff worked as a therapy aide at the Manhattan Psychiatric Center, experience he alleges Defendant Bernier was aware of.  Amend. Compl. ¶¶ 22, 23.  In contrast, Lewis' experience was as a hotel manager.  Bernier Dep. 79:17-22.  These circumstances are enough to raise an issue of material fact for trial and summary judgment will not be granted as to this claim.

In sum, Plaintiff has put forward enough to sustain claims for wrongful termination and failure to promote based on race and national origin discrimination, thus, summary judgment is denied as to these claims.

### B. State Law Claims

*1. Intentional Infliction of Emotional Distress*

Under New York State law, to state a claim for intentional infliction of emotional distress, the Plaintiff must satisfy the following elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." Howell v. New York Post Co., 81 N.Y.2d 115, 122 (N.Y. 1993) (internal citation omitted).  In other words, the Plaintiff must demonstrate that "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Id.  This is a strict standard, and hard to satisfy.  Id.

Based on the record before me, Plaintiff has not demonstrated, as discussed above, that the harassing incidents he allegedly was subjected to rise to the requisite level of outrageousness to sustain a claim here. Thus, the motion is granted as to this claim.

*2. Negligent Infliction of Emotional Distress*

Plaintiff brings a claim for negligent infliction of emotional distress based on the humiliation and embarrassment he claims he suffered as a result of the disparaging remarks Defendant Bernier made about African-Americans in front of the residents at 129th Street site along with Defendant Tucker's failure to act to prevent this conduct.  Due to this, Goss asserts that he required and received psychiatric treatment to address his emotional distress.

While this may all be true, under New York law, a cause of action for negligent infliction of emotional distress is recognized under two circumstances – where a Plaintiff fears for his or her safety due to a traumatic event, Ford v. Village Imports, Ltd., 461 N.Y.S.2d 108, 108 (1983), or where the Defendant owes a special duty only to the Plaintiff.  Cucchi v. New York City Off-

Track Betting Corp., 818 F.Supp. 647, 656 (S.D.N.Y. 1993). Plaintiff has failed to make a showing (or even an allegation) that he qualifies under either of these tests and, thus, the motion is granted as to this claim.

## IV.   CONCLUSION

For the reasons stated above, this motion for summary judgment is granted with respect to the individual defendants Bernier and Tucker and the complaint against them is dismissed. With respect to WSFSSH, the motion is granted with respect to the Title VII hostile work environment and wage disparity claims as well as the state law intentional and negligent infliction of emotional distress claims. The motion is denied with respect to the Title VII wrongful termination and failure to promote claims. A jury trial on those issues will commence on Monday, February 12, 2007 at 10 AM in Courtroom 21A. The Clerk of the Court is instructed to close this motion and remove it from my docket.

**IT IS SO ORDERED.**

**New York, New York**
**January ___, 2007**

U.S.D.J.